**In the Matter of Edward H. SPOHN, Debtor.**

**Bankruptcy No. LM13–85–00768.**

United States Bankruptcy Court, W.D. Wisconsin.

June 5, 1986.

William A. Chatterton, Madison, Wis., Trustee.

Roger G. Schnitzler, Madison, Wis., for debtor.

Douglas K. Marone, Curran, Curran & Hollenbeck, S.C., Mauston, Wis., for creditor.

## MEMORANDUM DECISION

### ROBERT D. MARTIN, Chief Judge.

On April 24, 1985, the debtor, Edward Spohn ("Spohn"), filed his chapter 13 petition and plan. Community First Bank ("the bank"), which holds a mortgage on certain of the debtor's real estate, filed a secured claim for $86,899.55 on May 29, 1985. The debtor's plan proposed to surrender the real estate to the bank in satisfaction of $83,464.25 of a claim of $84,-007.51. The balance was to be paid in thirty-six equal monthly installments at 13% interest. The proposed plan also permitted the bank to retain a lien on the debtor's trucks and equipment as security for the monthly payments to be made under the plan. The bank objected to the plan on the grounds that the real estate to be surrendered under the plan was not worth the fair market value of $92,500.00 which the debtor attributed to it, and that the plan misstated the total amount of the bank's claim.

On November 4, 1985, the debtor surrendered to the bank real property valued at $91,561.00 after a hearing before this court on October 4, 1985, and subject to unpaid real estate taxes. On November 13, 1985, the debtor filed an amended plan. His amended plan valued the bank's claim at $84,356.39. After deducting estimated unpaid real estate taxes, and after allowing the bank a credit of $4,000.00 for survey, legal, and other expenses necessary in order to subdivide the property the debtor's plan calculated the net partial satisfaction at $82,525.25. The amended plan provided for thirty-six equal monthly payments of $61.72 plus the trustee's fee. On November 20, 1985, the debtor's amended plan was conditionally confirmed. The bank asserts that its total claim as of November 4, 1985, the date the debtor surrendered the real estate, was $94,706.25, and that the plan must recognize that claim as secured and pay it in full.

### I.

The bank's claim filed May 29, 1985, consisted of:

| | | |
|---|---|---|
| principal balance | 6/29/84 | $77,470.98 |
| interest at 24.92 per day to 4/10/85 | | 7,077.28 |
| disbursements | | 393.75 |
| attorney's fees | | 1,957.50 |
| **TOTAL** | | 86,899.51 |

No objection to the claim was ever filed by the debtor. A proof of claim duly filed is accorded prima facie validity. *See In Re Hotel Associates, Inc.*, 3 B.R. 340, 342 (Bankr.E.D.Pa.1980); *In Re Record Club of America, Inc.*, 18 B.R. 456, 458 (Bankr. M.D.Pa.1982). *See Fleeger v. Ames*, 120 F.2d 803, 805 (10th Cir.1941). Unless the debtor objects and tenders sufficient evidence to overcome the prima facie validity accorded to the claim, the claim is allowed.

Although the unsecured creditors are bound by the terms of a confirmed plan, even if the plan erroneously treats their claim, the lien held by a secured creditor cannot be defeated by the terms of a confirmed plan. *See In Re Simmons*, 765 F.2d 547 (5th Cir.1985). Unless the debtor objects to the secured claim the claim is deemed allowed for purposes of the plan. *See id.* at 553, *citing In Re Hartford*, 7 B.R. 914 (Bankr.D.Me.1981). This principle appears to hold true even when the secured creditor has failed to file a proof of claim. *See Simmons, supra,* at 551. *See also In Re Tarnow*, 749 F.2d 464, 465 (7th Cir. 1984). Thus, unless the underlying claim has been disallowed the lien securing the claim is not extinguished by bankruptcy. *See id.* at 466–67. *See also Long v. Bullard*, 117 U.S. 617, 620–21, 6 S.Ct. 917, 918,

29 L.Ed. 1004 (1886). It follows that the debtor's chapter 13 plan must provide for the full amount of the bank's lien or for surrender of all the collateral. *See* 11 U.S.C. § 1325(a)(5). The bank is entitled to a claim at least in the amount of $86,-899.51.

The bank now claims the following additional amounts:

| | |
|---|---|
| interest 4/10/85 to 11/4/85 (215 days at $24.92 a day) | $5,357.80 |
| disbursements (including appraiser's fee) | 436.70 |
| attorney's fees | 2,361.00 [1] |
| TOTAL | $8,155.50 |

The debtor in whole or in part objects to all portions of this additional claim.

Clause four of the mortgage between the parties expressly grants the bank security for costs and expenses of collection or enforcement to the extent not prohibited by law. Clause 14 of the mortgage specifically allows recovery for "attorney's fees and expenses of obtaining title evidence, incurred ... in foreclosing this [m]ortgage." There is no question that Wisconsin law permits contracting parties to provide for costs and attorney's fees. *See Fellenz v. Gonring,* 113 Wis.2d 228, 335 N.W.2d 884 (App.1983).

The debtor does not contest the basis of the bank's calculation of additional interest, costs and fees, but argues that the bank is not entitled to any amount for such charges accrued after the date the original plan was filed. The basis of the debtor's contention is that the bank unreasonably objected to the debtor's initial plan. However, the bank successfully objected both to the debtor's misstatement of the bank's claim and the debtor's valuation of the property. Additionally, the bank objected that the debtor's proposed payments were insufficient to cover depreciation of the collateral, the market interest rate, and the present value of the equipment to be paid over the term of the plan.

I cannot find that the bank's objections were unreasonable in light of its success. The collateral was found to be worth approximately $1,000.00 less than the value proposed in the debtor's original plan. Further, it is clear that the debtor's plan did not properly provide for the full payment of the bank's original claim of $86,-899.51. If the debtor had wanted to dispute that figure the proper procedure was to object to the claim and not to seek to reduce the claim by the provisions of a chapter 13 plan. *See In Re Tarnow, supra.* I must conclude that the bank's objections were reasonable and brought in good faith.

Alternatively, the debtor argues that for purposes of determining the amount of the bank's allowed secured claim the "effective date of the plan" (11 U.S.C. § 1325(a)) must be considered to be the date of the filing of the chapter 13 petition. The debtor cites *In Re Adams,* 2 B.R. 313 (Bankr.M.D.Fla. 1980) in support of this proposition. However, *Adams* merely held that the relevant date for purposes of valuation of *collateral* is the date the petition is filed in order that the secured creditor not shift any risks of change in value to the unsecured creditors. *Id.* at 314. In the present matter there is no question concerning the relevant date for valuation of the collateral since there is no contention that the collateral has increased or decreased in value during the pendency of the bank's objection. Therefore, *Adams* does not address the issue presently before the court.

Section 502 of the Code provides in relevant part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in

---

**1.** The bank also claims $348.80 in attorney's fees accrued since the November 4, 1985, surrender

date.

lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

. . . .

(2) such claim is for unmatured interest. . . .

11 U.S.C. § 502(a), (b)(2). Thus, on its face section 502 requires that the allowed amount of a claim be determined as of the date of the filing of the petition. Section 502(b)(2) expressly disallows unmatured interest.

■ Although section 502 disallows interest which accrues after the date of the filing of the petition, section 506(b) [2] allows an oversecured creditor to receive any reasonable fees, costs, or charges, including interest, to the extent that the value of the collateral exceeds the amount of the underlying claim.[3] *See In Re Kennedy Mortgage Co.*, 23 B.R. 466 (Bankr.D.N.J.1982); *In Re Busman*, 5 B.R. 332 (Bankr.E.D.N.Y.1980); *In Re Davis*, 14 B.R. 226 (Bankr.D.Maine 1981). Thus a secured party is entitled to post-petition interest in an amount not greater than the amount by which the value of the secured party's interest in collateral exceeds the amount of the underlying claim. *In Re Davis, supra; In Re Elmwood Farm Inc.*, 19 B.R. 338 (Bankr.S.D.N.Y.1982). Post-petition costs and attorney's fees may also be awarded pursuant to 11 U.S.C. § 506(b) where the creditor is oversecured. *See Elmwood Farm, supra; Longwell v. Banco Mort-*

*gage Co.*, 38 B.R. 709 (N.D.Ohio 1984). The bank's claim for attorney's fees is however subject to review by the court under the standard of reasonableness. *See Longwell, supra; In Re New England Fish Company*, 28 B.R. 673 (Bankr.W.D.Wa.1982).

In this case the collateral consists of real property valued at $91,561.00 and the debtor's two trucks and stump cutter, valued at approximately $10,000.00.[4] The value of the real property must be offset by the amount of unpaid real estate taxes which constitute a prior lien against the property. Taxes for 1982 and 1983 totalled $2,902.42. The debtor estimated 1984 taxes at $1,600.00 and 1985 taxes pro-rated through April 30, 1985, at $533.33.[5] Even accepting the debtor's estimates, 1985 taxes must be pro-rated through November 4, 1985, the date the debtor surrendered the real property to the bank. Thus 1985 taxes equal approximately $1,375.90. The adjusted surrender value of the real estate equals $85,682.68.[6] The value of all collateral thus equals approximately $95,682.68. The bank's total claim is $95,055.01. Adequate security exists in order for the bank's full claim to be allowed.

As noted above, section 506(b) of the Code provides for the allowance of post-petition interest and reasonable fees, costs, or charges provided for under the party's agreement. *See In Re Minguey*, 10 B.R. 806 (Bankr.W.D.Wis.1981). The post-petition interest claimed by the bank is there-

**2.** 11 U.S.C. § 506(b) provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

**3.** As noted above it is only necessary to consider those charges which exceed the bank's original claim of $86,899.51 since that claim is valid due to the debtor's failure to object.

**4.** The debtor's trucks and stump cutter have apparently not been the subject of a valuation hearing in this court, and their value is taken from the debtor's schedules.

**5.** All figures for real estate taxes are taken from the debtor's amended plan and thus are regarded as admitted by the debtor.

**6.** For purposes of determining the actual value of the real estate it is not necessary to include as a further deduction the $4,000.00 "allowance" in the debtor's plan for the various costs associated with subdividing the parcels since there is no evidence suggesting that any of those amounts constituted prior lien charges upon the land. As to such costs the bank will be largely unsecured since the current amount of its claim nearly equals the adjusted value of the collateral. The debtor is of course obligated to make provision for any unsecured debt only to the extent mandated by chapter 13 of the Code.

fore allowable as a part of its secured claim.

The bank claims a total of $436.70 in post-petition disbursements including the appraiser's fee and a total of $2,361.00 for post-petition attorney's fees. The attorney's fees have been billed at $60.00 per hour. The rate charged and the number of hours billed appear to be reasonable in character and amount considering the litigation in the case. When attorney's fees are sought in bankruptcy on the basis of a contractual provision it is not sufficient to show merely that the services were rendered competently and that the hours and rates charged were reasonable. The court must consider the actual benefit to the creditor in determining the propriety of the fees. *In Re Campbell,* 1 B.R. 157, 161 (Bankr.W.D.Wis.1979). An examination of the record in this case reveals that the case presented fairly difficult questions of fact and law. The bank has proven successful on most of the issues litigated. Thus, the bank has been substantially benefitted by the efforts of its counsel and is entitled to assert its claim for post-petition attorney's fees and disbursements. *Id.*

The chart below summarizes the bank's allowed claim in the debtor's chapter 13 case.

| | |
|---|---|
| original proof of claim | $86,899.51 |
| interest to 11/4/85 | 5,357.80 |
| disbursements | 436.70 |
| attorney's fees | 2,361.00 |
| TOTAL on 11/4/85 | $95,055.01 |

The total claim of $95,055.01 must be offset by the value of the property surrendered. That amount has been determined to be $85,682.68. The bank's adjusted claim thus equals $9,372.33.

The debtor's plan must be amended to provide for payment of the bank's remaining claim as required by 11 U.S.C. § 1325(a)(5). The present plan of the debtor recites the debtor's intention to pay the bank's allowed secured claim in full, but provides payments which are insufficient to accomplish that purpose. Failure to amend the payments to provide a sufficient amount within thirty days of the order entered in connection with this memorandum decision will constitute grounds for dismissal of this chapter 13 case without further hearing. It may be so ordered.