**In re Michael John SIEGLER and Rox Ann Grittner Siegler, Debtors.**

**CATHOLIC CREDIT UNION, Plaintiff,**

**v.**

**Michael John SIEGLER and Rox Ann Grittner Siegler, Defendants.**

**Bankruptcy No. 479 BKY 01181(O).
Adv. No. 479 BKY 0004(O).**

United States Bankruptcy Court,
D. Minnesota.

Feb. 29, 1980.

Alan L. Atlas, Minneapolis, Minn., for plaintiff.

Richard J. Haefile, Chaska, Minn., for defendants.

## MEMORANDUM AND ORDER

KENNETH G. OWENS, Bankruptcy Judge.

This adversary proceeding was commenced by complaint filed on November 13, 1979. The defendants filed an answer on November 21, 1979. Pre-trial conference was held on December 6, 1979, with appearances by Alan L. Atlas, attorney for plaintiff, and Richard J. Haefele, attorney for defendants with continuances to December 28, 1979, January 18 and February 15, 1980.

The parties have now submitted appraisals and information and further have stipulated and agreed that plaintiff requests lifting of the automatic stay under 11 U.S.C. § 362(d) with respect to a 1974 Ford Mustang II serial number 4F02Y435123 or adequate protection by payment of its secured claim value, that defendants request redemption by payment of such value, that the automobile is not property of the estate and is property of the defendants by exemption or abandonment, that the lien held by plaintiff is valid and the amount due thereon is greater than such value, and that the court may determine the matter and value as submitted under Local Interim Bankruptcy Rule 16(c) as if plaintiff had filed an allowed claim under 11 U.S.C. § 501(a) and the parties had requested the court to determine the allowed secured claim part thereof under 11 U.S.C. § 506(a).

Plaintiff is entitled to the relief requested subject to the right of defendants to redeem such property from the lien. Defendants are individuals using this property which secures a dischargeable consumer debt for personal, family or household use. 11 U.S.C. § 772 states that a debtor may redeem this kind of property from a lien by payment of the allowed secured claim to the lienholder. 11 U.S.C. § 506(a) states that such allowed secured claim is the value of the property and that such value "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . ."

In this proceeding the court finds that the value of this property is that amount which this plaintiff would be able to apply to the debt secured by the lien after deliberate sale and deduction of sale or foreclosure expense including such repairs as this plaintiff would have made to improve the property for the final sale. The plaintiff is a credit union at St. Cloud, Minnesota. No one can safely predict net realization until actual sale is promised or completed. But arguably this plaintiff in its location would invest more time, money and patience to such sale and thereby increase its net realization compared to other secured creditors such as banks or finance companies in other areas.

As an alternative value, the court finds that the value of this property is that amount which these defendants would have

14

to pay a willing seller like the plaintiff in cash or equivalent to purchase property of like kind and quality in its present condition. The court believes these two values are identical. They are not loan, retail, wholesale, liquidation, fair market or even replacement values. They do recognize the reasonable expectancies of debtors and creditors under 11 U.S.C. §§ 506 and 722. They may therefore be termed together as the lien redemption value.

■ This 1974 automobile has 77000 miles and needs considerable repair. Defendants indicated the value was $1200 in their schedules. Four appraisal statements containing six appraisal figures have been submitted ranging from $625 to $1800. Each reflects understandable bias. The lowest comes from a liquidation appraiser. The highest comes from a dealer with perhaps a low inventory. The other two reflect initial reasonable values but conclude with much lower alternate values perhaps reflecting high inventories. These appraisals provide useful information but are not controlling.

The National Automobile Dealer Association (NADA) tables submitted indicate the value would range from $1275 loan value to $1425 trade-in value to $2000 retail value after certain equipment and mileage adjustments but before deduction for mechanical and body damage repairs which the appraisals indicate may range from $200 to $525. NADA retail value is an averaged value based on the prices of actual sales in the used car business. Such prices include the dealer's cost and profit including necessary repairs and other expenses. The plaintiff is not in the used car business. The plaintiff would seldom be able to sell any automobile after repairs at NADA retail value but would often be able to sell any automobile after repairs for more than NADA loan value.

The final range of values from all this information submitted is from $625 to $2000. Determining value from such disparate information is more guesswork or averaging than reliable computation and really reflects a prediction of final sale value

without benefit of a final sale actually happening. However, if the property is not redeemed immediately at the value now determined, the court has also determined to continue the stay under 11 U.S.C. § 105(a) which was originally provided by 11 U.S.C. § 362(a)(5), but to modify and condition such stay, and to permit future redemption before a final sale by using a procedure similar to that provided by 11 U.S.C. § 363(i) for co-owners of property being sold by a trustee.

The value of this property in these circumstances and as of the date the petition commencing this case was filed, being the lien redemption value as defined above, is therefore determined to be $1760, which represents $1275 loan value plus two-thirds of the $725 difference between loan value and retail value according to the NADA tables, less $400 for repairs and $60 for sale and other expenses, or $1300 final value. Ordinarily one-half of the difference between NADA loan value and retail value would have been added to the loan value considering the mileage and age of this automobile. Two-thirds have been added instead on the ground that this plaintiff in its location could realize that much more if permitted to foreclose its lien on this property. The amounts stated for repairs, sale and other expense are estimates based on consideration of the information provided.

IT IS THEREFORE ORDERED:

1. The 1974 Ford Mustang II described above is valued at $1300 which is determined to be the amount of the allowed secured claim of the plaintiff in this case under 11 U.S.C. § 506(a).

2. Defendants may redeem such property from the lien securing such claim under 11 U.S.C. § 722 by paying plaintiff $1300 cash or bank money order on or before March 17, 1980.

3. The stay originally provided by 11 U.S.C. § 362(a)(5) is continued under 11 U.S.C. § 105(a) until further order or as provided below but in the absence of such payment on or before March 17, 1980, is modified and conditioned as of March 18, 1980, as follows:

(a) defendants shall surrender possession of such property to the plaintiff forthwith;

(b) plaintiff shall take such title to, make such repairs of and conduct such sale on such property as it deems appropriate; and

(c) before the consummation of any final sale by plaintiff which determines the amount to be applied to the debt secured by the lien, including a final sale to itself which is permitted, and on not less than two days notice to defendants, the defendants may redeem such property from such lien by purchasing such property from the plaintiff for cash or bank money order at the price at which such sale is to be consummated.

4. Upon such immediate redemption by payment of such amount, consummation of such final sale by plaintiff, or future redemption before such final sale by payment of such price, which shall be reported in writing to the clerk of this court by the plaintiff, such stay is terminated.