**In re Shirley Ann STAUFFER.**

**Bankruptcy No. 92–60322.**

United States Bankruptcy Court, N.D. Ohio.

May 26, 1992.

Jonathon L. McGee, Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, for General Motors Acceptance Corp.

Donald R. Little, Canton, Ohio, for debtor.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

General Motors Acceptance Corporation, North America (GMAC) filed its objection to the confirmation of the Chapter 13 plan filed by Shirley Ann Stauffer (Debtor), based on what it alleges to be the incorrect valuation of its secured claim. After oral hearing on April 3, 1992, the parties were directed to file post-hearing briefs supporting their respective positions.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## FACTS

The parties have stipulated to the following facts. Debtor executed a retail installment sales contract in December of 1988, which was assigned to GMAC, for the purchase of a 1989 Buick Skylark (the Vehicle). The base cash price was $13,529.61. GMAC has a valid perfected security interest in the Vehicle and was owed $8,933.27 as of the petition date, February 14, 1992. Debtor's plan values GMAC's secured claim at $4,875.00, the NADA wholesale book value for February, 1992. If GMAC repossessed and sold the Vehicle on the petition date, it would receive approximately this $4,875.00 value. GMAC urges a valuation of $6,000.00, the NADA retail book value for February, 1992, because Debtor plans to retain and use the Vehicle. If Debtor attempted to purchase this Vehicle on the open market, she would have to pay at or near the $6,000.00 retail value.

## DISCUSSION

The parties correctly conclude that this court's decision will have a substantial impact on both Chapter 13 debtors and their creditors who appear before it, as neither the Sixth Circuit nor any other bankruptcy court in this District has published an opinion on the appropriate method of valuing a vehicle in a Chapter 13 plan. One suspects that this presumably common problem has been resolved informally and dealt with as a matter of custom over the years as is often the case with the mundane problems

that arise in consumer bankruptcy cases. Certainly, that has been true, until now, in this court. Examination of the cases from those courts which have addressed the issue make us less confident of a simple solution than the Debtor who asserts in her brief that the "vast majority of cases rule wholesale is the value to use."

Section 506(a) controls valuation of an allowed secured claim under the several chapters of the Code, including Chapter 13.

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

In the instant scenario, which is certainly typical, the purpose of the valuation is to fix the amount of GMAC's secured claim in the Vehicle, so GMAC can be paid this amount over time through the plan administered by the Chapter 13 trustee. The proposed use or disposition of the property is that it be retained by the Debtor for personal transportation.

The highest court to decide this issue has held that wholesale value approximated what the creditor would receive if it disposed of the collateral in a commercially reasonable manner. *In re Mitchell*, 954 F.2d 557 (9th Cir.1992) GMAC was also the objecting creditor in *Mitchell* and made the identical argument that value should be calculated at replacement cost to the debtor who would continue to use the car. The Ninth Circuit placed more emphasis on the "value of such creditor's interest" language of § 506(a), commenting that contemplated use by the debtor may only be relevant if it is of particular benefit or detriment to the value. *Id.* at 560. Two other fairly recent cases involving GMAC

have also adopted an identical rationale, though both were decided prior to *Mitchell. See Johnson v. GMAC*, 115 B.R. 515 (Bankr.D.S.C.1988); *In re Owens*, 120 B.R. 487 (Bankr.E.D.Ark.1990).

Although the *Mitchell* court bases its decision on the statutory language of § 506(a), the quoted portion of the statute is incomplete. The secured claim is not "the value of the 'creditor's interest' in the property" as the *Mitchell* opinion states at page 560, but rather "the value of such creditor's interest *in the estate's interest* in such property ..." as the actual language of § 506(a) reads. (Emphasis added) As succinctly pointed out by Judge Noonan in his dissent in *Mitchell:*

> [T]he "property" of the estate of the debtors is the [vehicle]. The "interest of the estate" is the ownership and possession of the automobile. The "interest of the creditor," GMAC, is "a security interest", conferred by the conditional sales contract. The crux of the case is the value of this interest.
>
> To an uninformed layman, "value" and "valuation" appear simple and unambiguous terms. The statute itself dispels such a misconception. The value of the creditor's interest depends upon its valuation, and, according to the second sentence of § 506(a), that valuation is to be done variously, in light of two factors, the purpose of the valuation and the use or disposition to be made of the interest.

*Id.* at 561.

GMAC correctly points out that if it were to repossess and sell the Vehicle at wholesale, it could receive the cash immediately. The fact that the Debtor can retain and use the Vehicle instead benefits "the estate's interest." At the same time, GMAC is compelled to assume various risks. It receives its payments over a three-year period, which can be extended, at the Debtor's option and with the court's approval, to five years. Even with interest, the Vehicle may depreciate at a rate greater than the value of "the creditor's interest" over the life of the plan. Finally, there is always the risk in Chapter 13 that the Debtor will fail to complete the plan, receive a hardship dis-

**614**

charge or be dismissed, at which point depreciation may have decreased the Vehicle's value to such an extent that GMAC will receive less than its allowed secured claim. The legislative history of § 506(a) notes in part:

> "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case by case basis, taking into account the facts of each case and the competing interest in the case.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 356, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6312.

The *Mitchell* court, in fixing a general rule that wholesale value applies in vehicle valuation, appears to ignore both the language and legislative intent of § 506(a), which contemplates evaluating benefits and risks to both estate and creditor.

Looking beyond *Mitchell*, one is confronted with a myriad of options that courts have settled upon. As recounted by one of them:

> Courts have relied on a number of different criteria, including wholesale value, retail value, an average between wholesale and retail value, retail replacement cost, and the "bid" market price, in determining the value of motor vehicles for confirmation purposes. There is no clear-cut formula or benchmark for "value," and valuation depends on the facts and evidence presented in each particular case.

*Owens*, 120 B.R. at 490 (citations omitted).

To use NADA wholesale value alone ignores the creditor's risks under a Chapter 13 plan. To use NADA retail valuation would compel the debtor to pay an amount far in excess of what the creditor would receive at repossession with immediate sale. The most equitable approach in such a situation would seem to this court to be to average the two figures, as was done in *In re Thayer*, 98 B.R. 748 (Bankr.W.D.Va. 1989). The court is also mindful that in some instances, other factors such as condition or mileage could warrant further adjustment in value. Bankruptcy Judge Sellers of the Southern District of Ohio, for instance, considered purchase price, need for repairs, and effect of winter climate, along with NADA values, in *In re Folk*, 70 B.R. 13 (Bankr.S.D.Ohio 1986).

The court therefore holds that a secured claim in a vehicle should be valued at the average of NADA wholesale and retail value on the petition date in a Chapter 13 plan. A party may request an evidentiary hearing if it believes certain factors necessitate a higher or lower value. Because no such evidence was presented in this case, the court finds that GMAC's secured claim in the Vehicle should be valued at $5,437.50.

An order in accordance herewith shall issue.